JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant Kevin Hughley ("Hughley") appeals his convictions of theft, in violation of R.C. 2913.02; forgery, in violation of R.C.2913.31; and uttering, in violation of R.C. 2913.31. We find no merit to the appeal and affirm.
 {¶ 2} The following facts give rise to this appeal. The victim in this case, Michael P. McNamee ("McNamee"), was a self-employed truck driver. In 2001, McNamee performed some work, hauling dirt with his truck, for Fabrizzi Trucking and Paving ("Fabrizzi"). McNamee would normally send Fabrizzi an invoice for his services and Fabrizzi would send him a check as payment for the services.Payment from Fabrizzi would take up to 65 days. The checks were made out to McNamee, did not have any signatures on the back, and would be signed and deposited by McNamee in his business account at Key Bank. McNamee testified that he never endorsed any of the checks over to a third party.
 {¶ 3} There came a time in 2001 when McNamee was missing a payment from Fabrizzi for $588. McNamee called Fabrizzi and was informed the check had been sent to his previous address at 1203 North Ridge Oval. Fabrizzi confirmed that the check had been cashed and sent McNamee a copy of the cancelled check.
 {¶ 4} The check had been issued by Fabrizzi, made payable to McNamee, and listed McNamee's old address. The back of the check contained three signatures. The top signature read Michael P. McNamee, the second signature read Randie Ross, and the third signature was not legible. McNamee testified that the first signature was not his and that he did not recognize the names or other signatures on the check.
 {¶ 5} The check was deposited at Huntington National Bank, the Brookgate branch in Brooklyn. Tony Harris, the security manager for Huntington National Bank, testified that the check was deposited into the account of Hughley and that the funds were still in the account. The transaction was caught on film showing Hughley making a deposit at the counter. The parties also stipulated that Hughley did reside at 1203 North Ridge Oval, which was the address to which the check was sent.
 {¶ 6} The defense called a handwriting expert who testified that the signatures on the check were not written by Hughley. On the other hand, Harris testified it is not uncommon for individuals working with spurious checks to have someone else write on the checks in order to avoid having their handwriting on forged checks. Harris further testified that in his experience, he has investigated cases in which individuals have placed forged checks into their own accounts, as opposed to accounts in a place other than their banking institution.
 {¶ 7} McNamee testified that he did not know Hughley, and had not given Hughley permission to deposit the check in Hughley's own account.
 {¶ 8} Hughley was charged in a three-count indictment with the offenses of theft, forgery, and uttering. Following a jury trial, a guilty verdict was returned on each count. The trial court proceeded to sentence Hughley to eleven months' incarceration on each count to run concurrently. The court also ordered Hughley to pay a cumulative fine of $750 and court costs.
 {¶ 9} Appellant has appealed his conviction raising one assignment of error, which states:
 {¶ 10} "I. The convictions for theft, forgery, and uttering, were against the manifest weight of the evidence."
 {¶ 11} When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52; State v. Martin (1983), 20 Ohio App.3d 172; State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 12} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court adopted the following guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10:
"(1) The reviewing court is not required to accept as true theincredible;
"(2) whether the evidence is uncontradicted;
"(3) whether a witness was impeached;
"(4) what was not proved;
"(5) the certainty of the evidence;
"(6) the reliability of the evidence;
"(7) whether a witness' testimony is self-serving;
"(8) whether the evidence is vague, uncertain, conflicting or fragmentary."
 {¶ 13} While considering these guidelines, we are mindful that the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. Furthermore, the power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v.Martin, 20 Ohio App.3d at 175.
 {¶ 14} In this case, the defense claims the state failed to prove that Hughley signed the two endorsements which preceded his signature, that he intended to permanently deprive the owner of the funds, and that he negotiated the check with knowledge it was stolen. The state argues there was substantial evidence upon which a jury could reasonably conclude all the elements of the offenses had been proven beyond a reasonable doubt.
 {¶ 15} The first offense of which Hughley was convicted was theft. R.C. 2913.02 provides that one is guilty of theft if that person, with purpose to deprive the owner of property, knowingly obtains or exerts control over the property without the consent of the owner or person authorized to give consent.
 {¶ 16} The evidence in this case reflects the check was issued to McNamee and sent to his former address, Hughley did reside at that location, and Hughley deposited the check into his own banking account. While the back of the check contained a signature of McNamee's name followed by two others, the evidence shows that McNamee never endorsed the check at issue, and never endorsed any of the checks issued by Fabrizzi over to third parties. Further, while there was evidence that the endorsed signatures were not in Hughley's handwriting, a rational trier of fact could have reasonably concluded upon the evidence presented and inferences therefrom, that Hughley used someone else's handwriting to forge the check.
 {¶ 17} The evidence presented supports a finding that Hughley, with purpose to deprive McNamee of his funds, knowingly exerted control over a check belonging to McNamee and took the funds without consent or authorization. We find the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense of theft beyond a reasonable doubt.
 {¶ 18} Appellant was also convicted of forgery and uttering under R.C. 2913.31, which provides in relevant part:
"(A) No person, with purpose to defraud, or knowing that the personis facilitating a fraud, shall do any of the following:
 "(1) Forge any writing of another without the other person's authority;
 "(2) Forge any writing so that it purports to be genuine when itactually is spurious, or to be the act of another who did not authorizethat act, or to have been executed at a time or place or with termsdifferent from what in fact was the case, or to be a copy of an originalwhen no such original existed;
 "(3) Utter, or possess with purpose to utter, any writing that theperson knows to have been forged."
 {¶ 19} Both "forge" and "utter" are defined in R.C. 2913.01:
"(G) `Forge' means to fabricate or create, in whole or in part andby any means, any spurious writing, or to make, execute, alter, complete,reproduce, or otherwise purport to authenticate any writing, when thewriting in fact is not authenticated by that conduct.
 "(H) `Utter' means to issue, publish, transfer, use, put or send intocirculation, deliver, or display."
 {¶ 20} In reviewing the record, the evidence presented was sufficient for the jury to reasonably conclude that Hughley forged the check so as to represent it had been validly endorsed, when in fact it had not, with purpose to defraud the bank. Hughley appeared at his bank to deposit a check that had been issued to another person and sent to an address at which Hughley did reside. While the endorsements may not have been in Hughley's handwriting, one can "forge" by fabricating "by any means" any spurious writing. R.C. 2913.01(G). This would include using another's handwriting to fabricate endorsements. With respect to uttering, the evidence was sufficient for a jury to infer Hughley knew the check had been forged when he displayed it at the bank and deposited it into his account.
 {¶ 21} Since the weight to be given the evidence and the credibility of the witnesses are primarily matters for the finder of fact to determine, we accord due deference to the jury's determination. SeeState v. Grant (1993), 67 Ohio St.3d 465, 477. A review of the record demonstrates that the jury did not lose its way and create a manifest miscarriage of justice by finding appellant guilty of forgery and uttering.
 {¶ 22} Because Hughley's convictions are not contrary to the manifest weight of evidence adduced at trial, Hughley's assigned error is overruled.
Judgment affirmed.
Colleen Conway Cooney, P.J., and Anthony O. Calabrese, Jr., J.,Concur.